UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES M. FERGUSON AND<br>LORIE ANN FERGUSON | CIVIL ACTION |
| VERSUS | NO. 06-3936 |
| STATE FARM INSURANCE COMPANY | SECTION "C" |

## ORDER

Before the Court are issues of law and fact for which the Court ordered briefing by both parties. After considering the briefs and reply briefs filed by the parties, the law and the facts, the Court comes to the following conclusions.

**1. Whether any evidence of the flood claim is relevant to this claim?**

On April 23, 2007,[1] the Court determined "that evidence of flood claims and payments is inadmissible with respect to the jury trial of the homeowner's claim… However...(i)n the event of recovery under the homeowner's policy, it shall be reduced by the amount of flood payments already made up to the pre-storm value of their property."[2] Upon reconsideration, the Court finds it erred with regard to the inadmissibility of the evidence of the flood claim. Evidence that the Plaintiffs purchased flood insurance and received payment on that claim is relevant to State Farm's defense against the Plaintiffs' claims for bad faith penalties under La. Rev. Stat. Ann. 22:658 and 22:1220.

---

[1] Rec. Doc. 101.
[2] *Id.*

1

**2. Whether replacement costs are the same as "actual cash value."**

The Court finds that replacement cost is not the same as actual cash value. Replacement cost is "[t]he cost of a substitute asset that is equivalent to an asset currently held. The new asset has the same utility but may or may not be identical to the one replaced."[3] On the other hand, actual cash value is the "[r]eplacement cost minus normal depreciation."[4] The parties have conceded that plaintiffs' homeowner's policy was a replacement cost policy rather than an actual cash value policy.[5]

**3. Burdens of Proof**

The Court finds there are two distinct burdens of proof in this case: Coverage A for the dwelling and other structures, and Coverage B for personal property.

Coverage A, for the dwelling and other structures, is an "open peril" policy, providing coverage for "accidental direct physical loss," subject to the policy's specific exclusions, limitations and conditions.[6] Under an open peril policy, if the insureds meet their threshold burden of proving an accidental direct physical loss to the insured property, then the burden shifts to the insurer to prove the applicability of any asserted exclusion by a preponderance of the evidence.[7] Under Louisiana law, the insurance company has the burden to prove that a loss comes within a policy exclusion.[8]

---

[3] *Black's Law Dictionary*, 8th edition, p. 372.
[4] *Black's Law Dictionary*, 8th edition, p. 1586.
[5] See certified policy attached as exhibits to Rec. Doc. 90 (defendant) and Rec. Doc. 92 (plaintiff).
[6] See *Christiansen v. State Farm Mut. Auto Ins. Co.*, 552 So. 2d 1377, 1378 (La. App. 5th Cir. 1989.); also *Ingersoll-Rand Fin. Corp. v. Employers Ins. Of Wau*sau, 771 F.2d 910, 912 n.2 (5th Cir. 1985).
[7] *Myevre v. Continental Cas. Co., App.* 4 Cir.1971, 245 So.2d 785, application denied 258 La. 764, 247 So.2d 863.
[8] *Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of L*ondon, 616 So.2d 1250 (La.1993); *Crocker v. Roach*, 33,507 (La.App.2d Cir.08/23/00), 766 So.2d 672, writ denied, 774 So.2d 983 (La.2000).

"Any exclusion from coverage in an insurance policy must be clear and unmistakeable… The burden is on the insurer to prove the applicability of an exclusionary clause in a policy of insurance."[9]  "Since the claim arises out of a contract of insurance between plaintiff and the defendant and involved coverage for which she paid a premium, the degree of proof required to avoid liability under its contractual obligation must be certain and decisive, leaving no area for speculation and assumption. Accordingly, the defendant in the instant matter had the burden to establish by a preponderance of the evidence..."[10]

The defendant has conceded that the plaintiffs have met their threshold burden of proving an accidental direct physical loss to the dwelling and other structures under Coverage A, as plaintiffs are the named insured; the policy was in effect on the date of the loss; and the house was reduced to a slab as a result of Hurricane Katrina. Accordingly, the Court finds that the burden of proof is on the defendant to prove any exclusion for Coverage A, for the dwelling and others structures, by a preponderance of the evidence.[11]  Should the defendant meet their threshold burden of proving the exclusion, the burden will again shift back to the plaintiffs to prove they fall under an exception to the exclusion, by a preponderance of the evidence.[12]

Coverage B, for the contents or personal property, is a "named peril" policy, providing coverage for "accidental direct physical loss," on a named or specific peril

---

[9] *Landry v. Louisiana Hosp. Service, Inc.*, 449 So.2d 584, 586 (La.App. 1 Cir. 1984), citations omitted.
[10] *Ferro v. Gebbia*, 252 So.2d 545, 547 (La.App., 1971), citations omitted.
[11] Defendant State Farm cites *Royal Surplus Lines Ins. Co. v. Brownsville Independent School Dist.* 404 F.Supp.2d 942 (S.D.Tex. 2005) as evidence that their burden of proving an exclusion is only to "adduce evidence" or "demonstrate that an exclusion arguably applies." However, that language is from the Texas Insurance Code and does not apply under Louisiana law.
[12] The Court notes that in *In re Katrina Canal Breaches Consol. Litig.*, 466 F.Supp.2d 729, 762-63 (E.D.La 2006), which defendant cites, Judge Duval upheld as valid and enforceable a water damage exclusion for flooding regardless of the cause. However, in this case the issue is the apportionment of damage between those caused by flood and those caused by wind, and not whether the exclusionary clause is valid.

basis. Under a named peril policy, the plaintiffs are required to prove by a preponderance of the evidence that their personal property was lost or damaged due to a specified covered risk named in the policy.[13] Should the plaintiffs meet this threshold requirement, the burden then shifts to the insurer to prove the applicability of any asserted exclusion by a preponderance of the evidence, as discussed above.

      The defendant has not conceded that the plaintiffs have met their threshold burden of proving the accidental direct physical loss *of their personal property* was due to a specified covered risk named in the policy, namely a windstorm.[14] In an action by an insured on an insurance contract, the burden of proof is on the insured to establish every fact essential to his cause of action and also to establish that his claim is within policy coverage."[15] "It is well settled that when a plaintiff must prove a disputed fact by a preponderance of the evidence, he must prove that the existence of the disputed fact is more probable than its nonexistence."[16] Accordingly, the Court finds that the burden of proof is on the plaintiff to prove that any damage under Coverage B, for the contents or personal property, was caused by a named peril, by a preponderance of the evidence.

---

[13] See *Opera Boats v. La Reunion Francais*, 702 F.Supp. 1278 (E.D.La.1989), affirmed, 893 F.2d 103 (5th Cir.1990); *Cambre v. The Travelers Indemnity Company*, 404 So.2d 511 (La.App. 1981).
[14] See certified insurance policy, FERGUSON 0175.
[15] *Collins v. New Orleans Public Service, Inc.*, App. 4 Cir.1970, 234 So.2d 270, writ refused 256 La. 375, 236 So.2d 503.
[16] *Davidson v. United Fire & Cas. Co.* 576 So.2d 586, 590 (La.App. 4 Cir.,1991), citing *Town of Slidell v. Temple*, 246 La. 137, 164 So.2d 276 (La.1964); *Perkins v. Texas & New Orleans Railroad*, 243 La. 829, 147 So.2d 646 (La.1962).

**4. Estoppel — whether the insured are estopped from claiming their home was a total loss due to wind and/or tornado because the insured made a flood claim and received their full flood policy limits.**

The Court finds that the plaintiffs are not estopped from making a claim against their homeowner policy. Plaintiffs argue they filed claims for coverage under both policies. The defendant has conceded that the flood insurance claim was paid on the basis of a telephone conversation, without an inspection; that the plaintiffs neither stated nor did they sign a proof of loss claiming that their home was destroyed solely as a result of flooding.

Again, the Court finds that the apportionment of loss due to wind and water is a factual matter for the jury to decide.

**5. Whether the insureds are limited to recovery of the difference between the pre-Katrina value of their dwelling and contents and the flood policy payments made to date on that dwelling and contents.**

"Compensation for property which is lost or destroyed is the value of the property at the time of the loss."[17] Plaintiffs and defendant dispute the value of the property at the time of the loss. The Court finds this is a factual matter for the jury to decide.[18]

---

[17] *Hammett v. New Orleans Diamond and Jewelry Wholesalers, Inc*. 580 So.2d 1077, *1082 (La.App. 4 Cir.1991), citing *Langendorf v. Administrators of Tulane Educational F*und, 361 So.2d 905 (La.App. 4th Cir.), writ denied 363 So.2d 1384 and 364 So.2d 120 (La.1978).

[18] The Court notes that the jury may find that the plaintiffs loss was sustained from both wind and water. "[A] combination of wind and flooding may have possibly damaged the Wellmeyers' home…. nothing bars the Wellmeyers from collecting under their homeowner's policy for wind damage and from collecting under their flood policy for flood damage if they can segregate and prove the two types of damages." *Wellmeyer v. Allstate Ins. Co*., 2007 WL 1235042, 2 (E.D.La. 2007).

The Court previously ordered "in the event of recovery under the homeowner's policy, it shall be reduced by the amount of flood payments already made up to the pre-storm value of their property."[19] The Court's order was in accord with the principle that the fundamental purpose of property insurance is indemnity, not profit.[20] As noted earlier, the Court overstated the position. The jury is the finder of fact. Once the jury apportions the percentage of damage caused by wind and the percentage of damage caused by flood, the appropriate calculations will be made. Each policy will then be responsible for its portion of the damage, if any, as determined by the jury.[21]

**6. Whether the doctrines of equitable and judicial estoppel both preclude the insureds from any recovery under their Homeowner's Policy in light of their previous position that their loss was the result of flood and their current contrary and irreconcilable contention that wind and/or a tornado destroyed their home prior to any flood or surge touching their home.**

As discussed under #4, the Court finds that the plaintiffs are not estopped from making a claim against their homeowner policy. Plaintiffs argue they filed claims for coverage under both their flood and homeowner policies. The defendant has conceded that the flood insurance claim was paid out on the basis of a telephone conversation, without inspection, and the plaintiffs never stated nor signed a proof of loss alleging that

---

[19] Rec. Doc. 101.
[20] See *Berkshire Mut. Ins. Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967); 15 La. Civ. L. Treatise, *Insurance Law & Practice* § 312 (3rd ed.): "[I]nsurance should be a device for making aperson whole after a loss is suffered rather than a way in which he might increase his wealth." See also *Cole v. Celotex Corp.*, 599 So.2d 1058, 1080 (La.1992): "As a general rule the claimant may recover under all available coverages provided that there is no double recovery."
[21] See calculation examples in #9.

their home was destroyed solely as a result of flooding. Again, the Court finds that the apportionment of loss due to wind and water is a factual matter for the jury.

**7. Whether the August 2006 amendments to the Louisiana Bad Faith Statutes apply retroactively to this claim which arose out of an event that occurred in August 2005.**

The Louisiana legislature's most recent amendment to La. Rev. Stat. § 22:658[22] went into effect on August 15, 2006, and increased the penalties for violations of the statute from 25 percent to 50 percent in addition to adding recovery for reasonable attorney fees and costs.[23]

Thus, the 50 percent penalty provision was not enacted until after State Farm allegedly violated the statute. Under La. Rev. Stat. § 1:2, "No Section of the Revised

---

[22] Payment and adjustment of claims, policies other than life and health and accident; personal vehicle damage claims; penalties; arson-related claims suspension…
(3) Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant.  In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant.  Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220…
(4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim…
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4), respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs.  Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings. LSA-R.S. 22:2658.
[23] 2006 La. Acts No. 813. (See Historical and Statutory Note: Acts 2006, No. 813, § 1, in par. (B)(1), in the first sentence, twice substituted "fifty percent" for "twenty-five percent" and added "as well as reasonable attorney fees and costs", and added the last sentence.)

Statutes is retroactive unless it is expressly so stated." The legislature did not include such an expression in 2006 La. Acts No. 813, and federal and state courts have consistently declined to read in a legislative intent to retroactively apply amendments to La. Rev. Stat. § 22:658 in its absence.[24]

The Louisiana legislature's most recent amendment to La. Rev. Stat. § 22:1220[25] went into effect on February 23, 2006, and added a provision awarding penalties for failure to pay claims pursuant to La. Rev. Stat. § 22:658.2, when the failure is arbitrary, capricious, or without probable cause.[26] Like the amendment to La. Rev. Stat. § 22:658, the legislature did not expressly state the amendment to La. Rev. Stat. § 22:1220 was retroactive, and so no legislative intent to retroactively apply it is appropriate.

The Court therefore concludes that plaintiffs' recovery of penalties under La. Rev. Stat. § 22:658, if any, is limited to 25 percent of the amount found to be due to them

---

[24] See *Tomlinson v. Allstate Ins. Co.*, Civ. Docket No. 06-617 (E.D. La. Feb. 12, 2007), holding that 2006 amendments to La. Rev. Stat. § 22:658 are not to be applied retroactively; *Lewis v. State Farm Ins. Co.*, 946 So. 2d 708, 728-29 (La. Ct. App. 2006), applying version of La. Rev. Stat. § 22:658 in place at time that plaintiffs' causes of action arose; *Geraci v. Byrne*, 934 So. 2d 263, 267 (La. Ct. App. 2006), same.

[25] Good faith duty; claims settlement practices; cause of action; penalties
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A…
 (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing…
 (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause…
(6) Failing to pay claims pursuant to R.S. 22:658.2 when such failure is arbitrary, capricious, or without probable cause.
C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings….
LSA-R.S. 22:1220.

[26] Amended by Acts 2006, 1st Ex.Sess., No. 12, § 1, eff. Feb. 23, 2006. (See Historical and Statutory Note: Acts 2006, 1st Ex.Sess., No. 12, § 1, added par. (B)(6).)

8

under their homeowner's policy, and no attorney fees may be awarded under this statute. The Court further concludes that plaintiff's recovery of penalties under La. Rev. Stat. § 22:1220, if any, is limited to any penalties available under the statute as it existed at the time the cause of action arose.

Finally, the Court notes that a decision for the plaintiffs in this case would not automatically entitle them to recover penalties. "La.R.S. 22:1220 is a penal statute and must be strictly construed, and the insurer has the right to litigate claims without being subjected to damages and penalties."[27] Any claim for penalties will have to be presented to the jury separately from the issue of causation of damages and proved by a preponderance of the evidence. "The Louisiana phrase, 'arbitrary, capricious, or without probable cause,' is synonymous with 'vexatious'. Both describe an insurer whose willful refusal of a claim is not based on a good faith defense."[28]  "Whether an insurer has been arbitrary and capricious is generally a question of fact."[29]  The Court finds that the issue of any penalties factual matter for the jury to decide.

**8. Calculations of potential payments available under the homeowner's policy should plaintiffs ultimately prevail.**

While it is true that plaintiffs paid for two separate policies, one homeowner and one flood, that does not equate to double coverage in the event of a given loss. The flood policy is not excess insurance. Instead, it covers a loss not covered by the homeowner

---

[27] *Bennett v. State Farm Insurance Company*, 869 So.2d 321, 328, 2003-1195 (La.App. 3 Cir. 3/24/04), citing *Darby v. Safeco Ins. Co.*, 545 So.2d 1022 (La.1989).
[28] *La. Maint. Serv. Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250 (La. 1993), citing *Phillip Rosamond Drill. Co., Inc. v. St. Paul F. & M.I. Co.*, 305 So.2d 630 (La.App. 2nd Cir.1974.
[29] *La. Maint. Serv. Inc. v. Certain Underwriters at Lloyd's of London*, 616 So.2d 1250 (La. 1993).

policy. Plaintiffs achieved full coverage by having two policies, so that either homeowner or flood insurance would cover any loss in full, or at least to the value they selected in their contracts. Plaintiffs could have purchased more insurance coverage on either policy by paying higher premiums. By choosing a lower level of coverage, the plaintiffs assumed some of the risk of any potential loss for the benefit of a lower premium. However, even had plaintiffs purchased higher coverage, the matter in dispute in this case would still exist, as Hurricane Katrina caused extensive wind damage and also produced unprecedented flooding. The parties are in disagreement as to the amount of damage caused by the wind itself and the flooding.

The value of the property and the apportionment of damage to either wind or water or both, as discussed earlier, is a matter for the jury to decide. The following examples set forth the calculations that will be used should plaintiffs prevail. These hypothetical examples merely illustrate the calculations, assuming that any burdens of proof have been sufficiently met to satisfy the jury, and in no way are to be interpreted as expressing any opinion by the Court on causation.[30] In addition, they do not deal with any penalty issues, which would be a factual matter for the jury to decide.[31]

---

[30] The Court is mindful of the possibility the jury could find different percentages of damage were proved for the dwelling than for contents. Should that happen, the Court will adjust the calculations accordingly. In the interests of clarity, the Court will not engage in that speculative calculation here.

[31] The Court notes that if the plaintiffs prevailed and the jury awarded penalties, they would have to fall within the proper statutory limitations as discussed earlier.

As a starting point, the following policy amounts are set forth:

The maximum homeowner policy benefit payable for a 100% covered loss, where the replacement value for the dwelling exceeded the policy limits, is $353,625.00.[32] This amount is reached by combining coverage for the dwelling ($172,500.00 plus $34,500.00 [20% excess] for a total of $207,000.00); other structures ($17, 250.00); and contents ($129,375.00).[33] Under no circumstances could the homeowner policy be interpreted to pay any higher amount than $353, 625.00.

The maximum flood policy benefit payable for a 100% covered loss was $167,700. This amount is reached by combining coverage for the dwelling ($137,700.00) and contents ($30,000.00). Under no circumstances could the flood policy be interpreted to pay any higher amount than $167,700.00.

***Hypothetical #1: The jury finds 100% of the damage was attributable to wind and 0% was attributable to flooding.***

In this scenario, the plaintiffs would be entitled to the full benefit of the homeowner policy, or $353,625.00. From that amount would be subtracted the payments plaintiffs received from the flood policy, or $167,700.00, to avoid double recovery. The defendant would then owe plaintiffs the difference, or $185,925.00.[34]

---

[32] The defendant points out that if the replacement cost for the dwelling is more than the policy limits, the plaintiff is entitled to a 20 percent increase on that portion of the policy, which provision is designed to protect insureds when replacement costs rise.

[33] The maximum homeowner policy benefit payable for a total covered loss, where the replacement value for the dwelling **equaled** the policy limits, would be $319,125. This amount is reached by combining coverages for the dwelling ($172,500.00); other structures ($17, 250.00); and contents ($129,375.00). However, neither party argues that the replacement cost is less than or equals the policy limits in this case. Accordingly, the Court will use the amount derived from applying the 20% bonus in this example.

[34] Whether the flood insurance overpayments in a hypothetical situation such as this would have to later be returned to the federal government is not at issue here; again, these calculations are illustrative only.

*Hypothetical #2: The jury finds 100% of the damage was attributable to flooding and 0% was attributable to wind.*

In this scenario, the plaintiffs would be entitled to the full benefit of the flood policy, or $167,700.00. Plaintiffs have already received this amount from their flood policy, and double recovery would not be an issue. The defendant would owe nothing.

*Hypothetical #3: The jury finds 25% of the damage was attributable to wind and 75% was attributable to flooding.*

In this scenario, the plaintiffs would be entitled 25% of the homeowner policy benefit, or $88,406.25. Plaintiffs would also be entitled to 75% of the flood policy benefit, or $125,775.00. The total amount awarded to the plaintiff would be $214,181.25. From that amount would be subtracted the payments they have already received from the flood policy, or $167,700.00. The defendant would owe the difference, or $46,481.25.

*Hypothetical #4: The jury finds 75% of the damage was attributable to wind and 25% was attributable to flooding.*

In this scenario, the plaintiffs would be entitled 75% of the homeowner policy benefit, or $265,218.75. Plaintiffs would also be entitled to 25% of the flood policy benefit, or $41,925.00. The total amount awarded to the plaintiff would be $307,143.75. From that amount would be subtracted the payments plaintiffs have already received from the flood policy, or $167,700.00. The defendant would owe the difference, or $139,443.75.

New Orleans, Louisiana this 4th day of May, 2007.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE